## Bradley Bros. v. Jones and Rogers.

(Decided March 28, 1913.)

### Appeal from McCracken Circuit Court.

Contracts—Sale of Bran by Manufacturer—When Liable to Purchaser for Purchase Price.—A manufacturer of bran at Paducah, Kentucky, having shipped a car load to a dealer at Memphis, Tennessee, under a contract to send bran of good quality and condition, is liable for the money paid for the bran when on its delivery there, it was moulded and unfit for use.

HENDRICK & CRICE for appellant.

J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Bradley Bros. are in the milling business at Paducah, Kentucky; Jones and Rogers are dealers at Memphis, Tennessee. About April 25, 1910, Bradley Bros. agreed to sell Jones and Rogers a carload of bran packed in bags for the sum of $352.84, to be delivered in Memphis, Tennessee, the bran to be nice, bright and of good quality and condition. Bradley Bros., on May 2, 1910, delivered the carload of bran to the Illinois Central Railroad Company at Paducah to be carried by it to Memphis, Tennessee; the car was shipped to the order of Bradley Bros. On that day they drew a sight draft for the sum of $352.84 against Jones and Rogers, at Memphis, Tennessee, attaching it to the bill of lading, and forwarding it to Memphis for collection, with instructions to the bank there to turn over the bill of lading to Jones and Rogers upon payment of the draft. The car of bran left Paducah at 10:45 p. m. on May 2, 1910; it arrived at Memphis at 10:45 a. m., May 3. The draft with the bill of lading attached was presented to Jones and Rogers at Mem-

phis on May 3. They paid the draft and the bill of lading was delivered to them. They had not then seen the car of bran or examined it and did not know it had arrived. It was customary for the railroad company to notify them when cars came. The railroad company gave them notice at 2:30 p. m. on May 5 that the car had arrived. This was the first actual notice they had of its arrival at Memphis. They at once directed the railroad company to place the car at their elevator, delivering to the railroad company the bill of lading. The railroad company placed the car at their elevator on May 7. The bran was then first examined by them. They found it moulded and worthless. They at once notified Bradley Bros. of its condition and placed the bran in a public warehouse. Bradley Bros. declined to pay back to them the money they had paid for the bran, and they brought this suit against Bradley Bros. to recover it. The proof for them on the trial was in substance that the bran was worthless and that its condition indicated that it had long been soured and of no value. There was mould on the outside of the sacks and the bran was caked and soured so as to be unfit to be used to feed stock, the purpose for which it was intended. On the other hand the proof for the defendant was to the effect that the bran when it left them was in good condition, and that at that time of the year bran will sour and cake in four or five days in a closed car. On this proof the court instructed the jury that if they believed from the evidence in the case that at the time the plaintiff accepted and paid the draft with the bill of lading attached, and at the time they received notice that the car of bran was ready for delivery, the bran was sour, caked or moulded and unfit for use, they should find for the plaintiffs; but unless they so believed, they should find for the defendants. The jury found for the plaintiffs; the court entered judgment in their favor, and the defendants appeal.

It is insisted that the instruction which the court gave was not warranted by the petition. It is alleged in the petition that the worthless and damaged condition of the bran existed at the time of the delivery thereof to the plaintiffs; and that the damaged and worthless condition of the bran at the time of the delivery to them was known to the defendants or could have been known by the exercise of ordinary care. It is true that the petition proceeds upon the idea that the bran was delivered

to the plaintiffs, when it reached their elevator; but all of the facts were brought out without objection to the evidence, and it was a question of law for the court when the bran was delivered to the plaintiffs. The court seems to have determined as a matter of law that the delivery of the bill of lading was a delivery of the bran. Under the instruction of the court to the jury the jury could not find for the plaintiffs, unless the bran at this time, and at the time when the plaintiffs had notice of the arrival of the car was moulded and unfit for use. The jury under the instructions which the court gave could not have found for the plaintiffs, if they believed from the evidence that the bran was not moulded and unfit for use at the time the bill of lading was delivered to the plaintiffs, although it afterwards became moulded and unfit for use between that time and May 5, when the plaintiffs were notified of the arrival of the car; for under the instructions of the court in order to render a verdict for the plaintiffs they were required to find that the bran was moulded and unfit for use on both days. The mould on the sacks and the very bad condition of the bran when the car was opened on the 7th warranted the jury in finding as they did.

Judgment affirmed.